**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**HENRY BOYD**                                                      **CIVIL ACTION**

**VERSUS**                                                            **NO.  14-117**

**JERRY LARPENTER,**                                        **SECTION "F" (5)**
**SHERIFF, ET AL.**

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and §1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and(2)**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## <u>Facts</u>

Plaintiff, Henry Boyd, an inmate incarcerated in the Terrebonne Parish Criminal Justice Complex in Houma, Louisiana, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983.  Boyd alleges that he injured his left ring finger during a fight with another inmate.  He further alleges that at the time of the fight, he was being held improperly with convicted

Department of Correction inmates, who are more prone to violence, rather than with pretrial detainees.  Specifically, Boyd states as follows:

> I arrived at the Terrebonne Parish Criminal Justice Complex on 8-8-13, for a felony criminal matter and parole violation, while waiting for criminal matter and due process (fighting offense) I, violated my parole supervision and became a Dept. of Corrections inmate, not a pre-trial inmate, I, was placed in a living area for convicted Dept. of Corrections inmates due to such on approximately Sept. 19, 2013 - Dec. 5, 2013, then my sentence for or with the Dept. of Corrections ended, and signed needed documents indicating such on that date.
>
> However, this facility somehow overlooked the need to remove me from this area, more prone to violence, and was involved in a fight during the middle of December 2013, in the Dept. of Corrections living area and I, was now a pre-trial detainee and not supposed to be in that area.[1]

Boyd sought medical treatment, but upon initial x-ray, no injury was found.  After the swelling in his finger subsided, another x-ray was taken and he was diagnosed with a torn ligament in his finger.  He claims he has not been referred to a specialist to repair the injury.  Boyd named as defendants, Sheriff Jerry Larpenter and Warden Thomas Cope.  He requests monetary compensation and injunctive relief.[2]

---

[1] Rec. Doc. 1, Complaint.

[2] The injunctive relief sought by plaintiff is that the "Court order this facility to refer [him] to [a] needed specialist,

## **Standards of Review**

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. §1915A.  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
>> (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that... the action or appeal –
>> (i)  is frivolous or malicious;
>> (ii) fails to state a claim on which relief may be

---

medical, to repair already diagnosed torn ligament in left ring finger as soon as possible."  By separate minute entry, the Court is ordering a medical examination for plaintiff which will render his request for injunctive relief MOOT.

                         granted; or
              (iii)seeks monetary damages against a defendant who
                    is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

     A claim is frivolous when it lacks an arguable basis in law or
in fact.  Neitzke v. Williams, 490 U.S. 319, 328 (1989) (superseded
by statute on other grounds); Talib v. Gilley, 138 F.3d 211, 213
(5th Cir. 1998).  A claim lacks an arguable basis in law if it is
based on an indisputably meritless legal theory, such as if the
complaint alleges the violation of a legal interest which clearly
does not exist.  Harper v. Showers, 174 F.3d 716, 718 (5th Cir.
1999).  It lacks an arguable factual basis if the facts alleged are
"clearly baseless," a category encompassing fanciful, fantastic,
and delusional allegations.  Denton v. Hernandez, 504 U.S. 25, 32-
33 (1992); Neitzke, 490 U.S. at 327-328.  Therefore, the Court must
determine whether the plaintiff's claims are based on an
indisputably meritless legal theory or clearly baseless factual
allegations.  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994);
see Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore
v. Mabus, 976 F.2d 269 (5th Cir. 1992).

     A complaint fails to state a claim on which relief may be
granted when the plaintiff does not "plead enough facts to state a

-4-

claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S.Ct. 1230, 1231 (2008).  The United States Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[3] the Court nevertheless finds that, for the following reasons, the complaint must be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted.

## Analysis

---

[3] The court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

A.    **Supervisory Officials**

Boyd named as defendants only Sheriff Larpenter and Warden Cope.  He does not indicate whether those defendants are being sued in their official capacities, their individual capacities, or both. However, regardless of plaintiff's intent, no claim has been properly stated against these defendants in any capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir.1999). Accordingly, official-capacity claims against these defendants would in reality be claims against the local governmental entity they serve, *i.e.* the Terrebonne Parish Sheriff's Office. The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government
> unit liable under Section 1983 for the misconduct of one
> of its employees, a plaintiff must initially allege that
> an official policy or custom was a cause in fact of the
> deprivation of rights inflicted. To satisfy the cause in
> fact requirement, a plaintiff must allege that the custom
> or policy served as a moving force behind the
> constitutional violation at issue or that [his] injuries
> resulted from the execution of an official policy or
> custom. The description of a policy or custom and its
> relationship to the underlying constitutional violation,
> moreover, cannot be conclusory; it must contain specific
> facts.

<u>Spiller v. City of Texas City, Police Department</u>, 130 F.3d 162, 167 (5th Cir.1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." <u>Colle v. Brazos County, Texas</u>, 981 F.2d 237, 245 (5th Cir.1993); see also <u>Wetzel v. Penzato</u>, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D.La. Dec. 23, 2009). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., <u>Murray v. Town of Mansura</u>, 76 Fed. App'x 547, 549 (5th Cir.2003); <u>Treece v. Louisiana</u>, 74 Fed. App'x 315, 316 (5th Cir.2003); <u>Wetzel</u>, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom, and, therefore, no official-capacity claim has been properly stated.

To the extent plaintiff intended to state individual-capacity claims against Sheriff Larpenter and Warden Cope, he has failed to state a proper claim for relief. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must

-7-

allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir.2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.1983).  In this case, plaintiff does not set forth any specific allegations in his complaint against either of the named defendants.  Under a broad reading, it appears that he has named the defendants because of their supervisory role over the deputies and the prison.

Supervisory officials, like the defendants, cannot be held liable pursuant to § 1983 under any theory of respondeat superior simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. See Alton v. Texas A & M Univ., 168 F.3d 196, 200 (5th Cir.1999); see also Baskin v. Parker, 602 F.2d 1205, 1220 (5th Cir.1979). A supervisory official may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir.1981); see also Watson v. Interstate Fire & Cas. Co., 611 F.2d 120 (5th Cir.1980).

-8-

In the instant case, Boyd has not alleged that Sheriff Larpenter or Warden Cope was personally involved in or even aware of the events or conditions of which he complains. Boyd has therefore failed to state a viable federal claim against these defendants under § 1983.

A warden or other supervising officer not personally involved in the acts that deprived the plaintiff of his constitutional rights may be liable under § 1983 if: (1) the warden or supervising officer failed to train or supervise the subordinate officers involved; (2) there is a causal connection between the alleged failure to supervise or to train and the alleged violation of the constitutional rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. Thompson v. Upshur Cnty., 245 F.3d 447, 459 (1991) (citations omitted).   In the instant case, however, Boyd names the defendants simply because of their supervisory positions. Boyd has alleged no cause of action for the defendants' personal involvement, failure to intervene, or failure to supervise.   The Court finds that Boyd's claims against the defendants are frivolous and otherwise fail to state a claim for which relief can be granted.

Nevertheless, even if Boyd could state a personal basis for liability against these defendants or identify a particular person who could be held liable under § 1983, his claims are still frivolous as set forth in the sections below.

**B.   Failure to protect**

Boyd claims he was injured in a fight with another inmate while he was being housed with convicted Department of Correction inmates. Specifically, he alleged "[T]his facility somehow overlooked the need to remove me from this area, more prone to violence, and [he] was involved in a fight."[4]

Prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Hare v. City of Corinth, 74 F.3d 633, 639, 650 (5th Cir.1996). However, not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. "Prison officials are not ... expected to prevent all inmate-on-inmate violence." Adames v. Perez, 331 F.3d 508, 512 (5th Cir.2003) (citing Farmer, 511 U.S. at 834). Instead, prison

---

[4] Rec. Doc. 1, Complaint.

-10-

officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a known substantial risk of serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Newton v. Black</u>, 133 F.3d 301, 308 (5th Cir.1998). The plaintiff, therefore, must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were knowingly and deliberately indifferent to his safety or his need for protection. <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995).

Boyd has not alleged that the defendants were intentionally indifferent to a known risk of harm. Nor do the factual circumstances alleged support such a claim.

**C.   Shared housing**

To the extent plaintiff may challenge the prison's practice in confining convicted inmates and pretrial detainees together, it is not *per se* unconstitutional to do so.  See <u>Jefferson v. Strain</u>, Civ. Action No. 13-0328, 2013 WL 4776499 *8-9 (E.D. La. 9/4/13). The United States Fifth Circuit has stated that "[t]he confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such a practice is 'reasonably related to the institution's interest in maintaining jail security,' or physical facilities do not permit their separation." <u>Jones v.</u>

-11-

<u>Diamond</u>, 636 F.2d 1364, 1374 (5th Cir.1981), <u>overruled on other grounds</u>, <u>Int'l Woodworkers v. Champion Int'l Corp.</u>, 790 F.2d 1174 (5th Cir.1986). Thus, the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification. <u>Pembroke v. Wood County</u>, 981 F.2d 225, 229 (5th Cir.1993); <u>Lathers v. Nelson Coleman Corr. Ctr.</u>, No. 10–128, 2010 WL 1489903, at *7–8 (E.D.La. Mar.22, 2010), <u>adopted</u>, 2010 WL 1485468 (E.D.La. Apr. 13, 2010). On the other hand, the Fifth Circuit also recognized in <u>Jones v. Diamond</u> that the housing of pretrial detainees with convicted inmates is permissible under some circumstances.

Significantly, the classification of inmates is an administrative function of the prison. <u>Jones v. Diamond</u>, 636 F.2d at 1376. The federal courts give great deference to the administrative decisions of prison officials and will not interfere with legitimate administration without a constitutional violation. See <u>Bell</u>, 441 U.S. 520, 547–48 (1979); <u>Smith v. Bingham</u>, 914 F.2d 740, 742 (5th Cir .1990). "Inmates have a federal right to due process at prison classification ... only if state law contains 'substantive predicates' limiting the prison administrators'

discretion to classify, assign, and punish inmates." <u>Ricker v. Leapley</u>, 25 F.3d 1406, 1409 (8th Cir.1994); <u>accord</u>, <u>Woods v. Edwards</u>, 51 F.3d 577, 582 (5th Cir.1995) (<u>citing</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 469-70, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)); <u>Canterino v. Wilson</u>, 869 F.2d 948, 953 (6th Cir.1989) (<u>citing</u> <u>Hewitt</u>, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [custodian] and an inmate has no right to a particular classification under state law." <u>Woods</u>, 51 F.3d at 581-82 (quotation omitted).

For these reasons, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." <u>Whitley v. Hunt</u>, 158 F.3d 882, 889 (5th Cir.1998) (citations omitted), <u>abrogated on other grounds</u>, <u>Booth v. Churner</u>, 532 U.S. 732, 735 (2001); <u>accord</u> <u>Wilkerson v. Stalder</u>, 329 F.3d 431, 436 (5th Cir.2003); <u>Jones v. Roach</u>, 196 F. App'x 287, 288 (5th Cir.2006).

Here, Boyd alleges neither that housing decisions at the Terrebonne Parish Criminal Justice Complex are made

-13-

indiscriminately without justification, or that the decisions are not reasonably related to the prison's interest in maintaining jail security.   Furthermore, under the circumstances, housing Boyd together with convicted inmates cannot be characterized as arbitrary or indiscriminate or as an abuse of the discretion the law assigns to prison officials, with which this court should not interfere.   Thus, the facts alleged do not support any constitutional violation arising out of the circumstances of his housing. See Julian v. Gusman, No. 10-4671, 2011 WL 1399694, at *7 (E.D.La. Feb.28, 2011), adopted, 2011 WL 1399220, at *1 (E.D.La. Apr.13, 2011).

**D.   Medical treatment**

Plaintiff alleges that Medical Director, Peter Neal, did not initially find any damage to plaintiff's finger.   After the swelling subsided, plaintiff forwarded a request and grievance to Mr. Neal, who re-evaluated the situation, took another x-ray, and referred him to Dr. Haydel.   Dr. Haydel diagnosed a torn ligament. Plaintiff states he is not certain if any referrals were made by Dr. Haydel to have the finger repaired.[5]

These allegations support, at most, a claim of negligent

---

[5] Rec. Doc. 1, Complaint.

-14-

medical care. Even if plaintiff could establish negligence, however, he still fails to state a cognizable federal claim under §1983. Negligence in diagnosing or treating a prisoner's medical condition does not amount to a constitutional violation.[6]  See Farmer, 511 U.S. at 835 (citing Estelle v. Gamble, 429 U.S. 97, 104-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The defendants may be held liable only if it is shown that their alleged misconduct amounted to deliberate indifference to a serious medical need. Id. Therefore, plaintiff's allegations based on a theory of negligence do not suffice to state a cognizable federal claim.

### RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint asserting claims pursuant to 42 U.S.C. § 1983, against the defendants, Sheriff Jerry Larpenter and Warden Thomas Cope, be **DISMISSED WITH PREJUDICE** as frivolous and/or for otherwise failing to state a claim upon which relief can be granted.

----

[6] As a pretrial detainee, Boyd's constitutional claims arise under the Due Process Clause of the Fourteenth Amendment, which, like the Eighth Amendment, places a duty on the State to protect against harm to persons in its confinement. See Hare, 74 F.3d at 639. In order to determine whether a pretrial detainee's rights have been violated under the Fourteenth Amendment, the court applies an analysis identical to that applied in Eighth Amendment cases. Id. at 643.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[7]

New Orleans, Louisiana, this   4th   day of   February  , 2014.

ALMA L. CHASEZ
**UNITED STATES MAGISTRATE JUDGE**

---

[7] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

-16-